```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

**UNITED STATES OF AMERICA, ex rel.** )
**MICHAEL STONE,**                    )
                                      )
       Petitioner,             )
                                      )
    v.                              )   No. 10 C 241
                                      )
**MARCUS HARDY, Warden,**             )
**Stateville Correctional Center,**   )
                                      )
       Respondent.             )

### MEMORANDUM OPINION AND ORDER

Petitioner Michael Stone ("Stone") has filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition is denied.

### I.

On the afternoon of September 12, 1999, the apartment at which Stone was living was burglarized. The burglars made off with money, jewelry, and a stash of marijuana. Stone's brother, Carter, believed that Friday Gardner ("Gardner") was involved in the burglary. Later that day, Carter, Stone, and Cortez Jones ("Jones") attempted to steal a radio from Gardner's van. Gardner caught them in the act, a confrontation ensued, and Gardner was shot and killed.

Witnesses gave police investigators conflicting information about the incident. Some witnesses stated that Carter and Jones had shot Gardner. Others identified Stone as the shooter. Some

witnesses claimed that Gardner had pulled a gun before he was shot. Others said that Gardner appeared to have been unarmed.

Stone, Carter, and Jones were arrested in connection with Gardner's death. Stone and Carter were tried together. At the trial, Stone testified that he had shot Gardner, but he insisted that the shooting was in self-defense. Stone admitted that he never saw Gardner draw a gun during the incident. Nevertheless, Stone claimed that, based on Gardner's reputation as a bully and gang member, he shot Gardner in the belief that Gardner was planning to shoot him and Carter. Stone and Carter were convicted of first degree murder and sentenced to thirty years in prison.

II.

Stone's habeas petition advances a disparate array of claims. First, he argues that the state trial court violated his right to a fair trial by (A) allowing the state to introduce prior statements by certain of Stone's witnesses that contradicted their testimony at trial; and (B) allowing the state to introduce evidence of unrelated criminal conduct (e.g., the marijuana stolen from Stone's apartment). Stone also contends (C) that the trial court denied his right to "fully present a defense" when it prohibited him from introducing evidence of prior consistent statements that he made to police concerning the incident. He further argues (D) that the prosecution erred by making a number of improper comments during the trial, and (E) that his thirty-year

sentence was excessive. In addition, Stone maintains (F) that his trial counsel was constitutionally ineffective and (G) that his appellate counsel was constitutionally ineffective. Lastly, he contends (H) that the state failed to prove that he did not act in self-defense.[1]

Of these claims, all but two -- claims (D) and (F) -- are procedurally defaulted. It is axiomatic that "[t]o avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts." *Anderson v. Benik*, 471 F.3d 811, 814 (7th Cir. 2006) (quotation marks omitted). This requires a petitioner to raise his claims through one complete round of state court review. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

Claims (A), (B), (C), and (E) were not properly presented as federal claims for one full round of state court proceedings. To the extent that these claims were raised in the state court proceedings, they were framed purely in terms of Illinois law. While Stone makes an occasional, passing reference to a "fundamental right to a fair trial" in some of his state court

---

[1] In Stone's petition, the state's failure to prove that he did not act in self-defense is not singled out as a freestanding claim. Instead, it is set forth in connection with his ineffective-assistance claim (i.e., that his counsel was ineffective for failing to argue that the state had failed to prove that he did not act in self-defense). Nonetheless, the state has treated the former claim separately from the latter in responding to Stone's petition. For the sake of clarity, I also treat them separately in what follows.

filings, the Seventh Circuit has made clear that alluding to issues in such vague and perfunctory terms is not enough "to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Harding v. Sternes*, 380 F.3d 1034, 1047 (7th Cir. 2004). Grounds (G) and (H) are likewise procedurally defaulted. Although Stone raised both claims in his post-conviction appeal in the trial court, he failed to raise them in the appellate court or in his PLAs.

The fact that the foregoing claims are procedurally defaulted is not the end of the story. A petitioner may overcome a procedural default by showing cause for, and prejudice from, the default; a procedural default can also be overcome if the petitioner is able to show that a fundamental miscarriage of justice would result if the merits of his claims were not considered. *See, e.g.*, *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).

Stone makes only a half-hearted effort to avail himself of these doctrines. In his reply brief, for example, he cites his counsel's ineffectiveness as cause for his failure to adequately present claim (B) in the state court proceedings. "When a habeas petitioner seeks to excuse a procedural default through an ineffective-assistance claim, the 'cause' and 'prejudice' test from *Wainwright* is replaced by the similar test for ineffective assistance set out in *Strickland v. Washington*." *Wrinkles v. Buss*,

537 F.3d 804, 812 (7th Cir. 2008). Yet after raising the ineffective-assistance argument, Stone makes no effort to address *Strickland*'s performance or prejudice prongs.

In a separately-filed motion for leave to amend his petition, Stone seeks to overcome his procedural default by invoking the "miscarriage of justice" exception. He raises a number of arguments in an effort to show his actual innocence of the murder charge. These, however, turn out to be essentially the same arguments as those previously advanced in his petition and reply brief. These come nowhere close to establishing his actual innocence.[2]

Stone's two remaining claims -- (D) and (F) -- are partially defaulted. In claim (D), Stone asserts that his right to a fair trial was violated as a result of prosecutorial error. Specifically, he argues that the prosecution erred by: (1) misrepresenting the testimony of one of the witnesses; (2) making inflammatory remarks and improperly invoking the integrity of the State's Attorney's office in urging the jury to convict him; and (3) improperly commenting on his counsel's tactics and impermissibly shifting the burden of proof from the prosecution to the defense. He also claims (4) that even if none of the alleged errors individually constituted a violation of his rights, their cumulative effect amounted to a constitutional violation.

---

[2] The motion for leave to amend is accordingly denied as moot.

Of these alleged errors, only (3) was fairly presented in a full round of proceedings in the state court. Claims (1) and (2) were presented to the appellate court on direct appeal, but not in Stone's PLA, and not in connection with Stone's state habeas petition. Since this leaves only claim (3), the allegation of cumulative error in claim (4) is no longer viable. Hence, insofar as claim (D) rests on these other grounds, Stone's prosecutorial error claim is defaulted.

Although ground (3) is not defaulted, it fails on the merits. Stone argues that the prosecutor "repeatedly made comments suggesting that the defense had a burden to produce witnesses and prove their innocence." Pet. at 19. His claim is based on two remarks made during the state's closing argument. The first had to do with the defense's failure to provide forensic and other evidence of Stone's innocence. In his opening argument, Stone's counsel told the jury that they would see evidence indicating the lack of any "stippling" (specks of gun powder burned into the skin) on Gardner's body. *See* Ex. T at 499-500. Stippling occurs when a victim is shot at close range. The defense argued that the absence of stippling undermined the state's theory that Gardner had been shot at close range. Despite this initial promise, however, the defense never produced evidence specifically concerning the absence of stippling. In its closing argument, the state remarked upon this fact:

| THE STATE: | But we're all going to look over here at close range firing to show, supposedly, that they're not guilty. You don't need it. That's why it's not there. That's why you were given the [medical] protocol, and that's all you need to know, because there is no argument about how Friday Gardner died, the manner of death. It doesn't matter about stipulating [sic] It has nothing to do with anything. Put somebody on - |
|---|---|
| [STONE'S COUNSEL]: | Objection. |
| | . . . . |
| THE COURT: | Overruled. |
| THE STATE: | If it is so important to your case, put somebody on the stand. You get to call people to the stand Mr. Defense Attorney. You get to put whoever you want up there as a witness. |
| [STONE'S COUNSEL]: | Objection, shifting the burden. |
| | . . . . |
| THE STATE: | Show the burden. |
| THE COURT: | Overruled. |
| THE STATE: | Call them. Or ask the person who is sitting up there, but don't ask if you don't want to know the answer, and then just argue it later on when you don't have any evidence about that. |

The second comment to which Stone objects had to do with remarks made by the prosecution about witness Tommy Gaston. As the appellate court explained, during his closing argument, defense counsel suggested that Gardner had been carrying a gun at the time of the altercation and that Gaston may have tampered with the

-7-

evidence by removing the gun after the shooting. *See* Ex. W at 1020-21. Responding to these insinuations, the prosecutor stated:

> THE STATE: All the first couple of days you hear is that Tommy took the gun. Tommy took the gun. Tommy took the gun. Well, when Tommy took the stand, Mr. Stone's attorney, right here, stood up and said, 'No cross.' Didn't ask him a single question: This is the person he has been waiting for. This is the man who took the gun that will show my client was acting in self-defense. He didn't ask him anything. Isn't that odd?!!

Under AEDPA, "a federal court [may] issue a writ of habeas corpus only if the state court reached a decision on the merits of a claim, and that decision was either 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Stock v. Rednour*, 621 F.3d 644, 648 (7th Cir. 2010) (citations omitted). It is not enough for the state court decision to be incorrect or erroneous; it must be objectively unreasonable. *See, e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

In reviewing a claim of prosecutorial misconduct, federal courts first consider "whether the challenged remark by the prosecutor was improper, and second, whether it prejudiced the defendant." *United States v. Corley*, 519 F.3d 716, 727 (7th Cir. 2008). In determining whether a defendant has been prejudiced, the court considers such factors as: "(1) whether the prosecutor

misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the response; (4) the efficacy of curative instructions; (5) the defendant's opportunity to rebut; and (6) the weight of the evidence." *Id.* "Ultimately, the inquiry turns on whether the improper statement so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quotation marks omitted).

The appellate court's decision was not contrary to, and did not involve an unreasonable application of, clearly established federal law on this point. Many courts, including the Seventh Circuit, have held that a prosecutor may fairly comment on the defense's failure to call witnesses to support its factual theory. *See, e.g., United States v. Glover*, 479 F.3d 511, 520 (7th Cir. 2007) (so long as "the evidence at issue does not implicate a defendant's right against self-incrimination, and the jury has been properly instructed as to the burden of proof, a prosecutor may comment on a defendant's failure to present evidence contradicting the government's proof at trial"); *Dexter v. Artus*, No. 01-CV-237, 2007 WL 963204, at *17 (N.D.N.Y. Mar. 27, 2007) (citing cases). Because the comments of the prosecutor here were of this kind, they cannot even be regarded as improper, much less unfairly prejudicial.

Yet even assuming that the prosecutor's comments were improper, the appellate court reasonably concluded that, on the

basis of some of the same factors listed in *Corley*, Stone was not unfairly prejudiced. In particular, the appellate court concluded that Stone's counsel invited the prosecutor's comments by questioning Gaston's credibility and by failing to follow through on the promise to provide evidence concerning stippling. The appellate court also opined that any error in the state's closing argument would have been rectified by the trial court's instructions to the jury regarding the presumption of the defendants' innocence, the state's burden of proof, and its admonition that the parties' closing statements did not constitute evidence. Ex. L at 22.

These conclusions are in line with federal case law described above. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 12 (1985) (noting that "most Courts of Appeals . . . have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray"); *United States v. Musser*, 856 F.2d 1484, 1485-86 (11th Cir. 1988). At all events, the comments at issue here represent a small portion of the closing arguments, and an almost vanishingly small portion of the trial as a whole. The appellate court was not unreasonable in concluding that the comments did not render the trial fundamentally unfair or amount to a denial of due process.

It is true that the appellate court did not cite federal law

basis of some of the same factors listed in *Corley*, Stone was not unfairly prejudiced. In particular, the appellate court concluded that Stone's counsel invited the prosecutor's comments by questioning Gaston's credibility and by failing to follow through on the promise to provide evidence concerning stippling. The appellate court also opined that any error in the state's closing argument would have been rectified by the trial court's instructions to the jury regarding the presumption of the defendants' innocence, the state's burden of proof, and its admonition that the parties' closing statements did not constitute evidence. Ex. L at 22.

These conclusions are in line with federal case law described above. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 12 (1985) (noting that "most Courts of Appeals . . . have refused to reverse convictions where prosecutors have responded reasonably in closing argument to defense counsel's attacks, thus rendering it unlikely that the jury was led astray"); *United States v. Musser*, 856 F.2d 1484, 1485-86 (11th Cir. 1988). At all events, the comments at issue here represent a small portion of the closing arguments, and an almost vanishingly small portion of the trial as a whole. The appellate court was not unreasonable in concluding that the comments did not render the trial fundamentally unfair or amount to a denial of due process.

It is true that the appellate court did not cite federal law

in its discussion of Stone's prosecutorial error claims. However, "a state court's decision is not contrary to clearly established federal law merely because the court does not cite federal law." *Gonzales v. Mize*, 565 F.3d 373, 384 n.8 (7th Cir. 2009). "[A] state court does not have to cite to Supreme Court cases -- indeed, § 2254(d) does not even require *awareness* of the Supreme Court case, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* (quotation marks and brackets omitted). Hence, Stone's claim for prosecutorial error in claim (D) does not afford a basis for habeas relief.

Lastly, claim (F) alleges a claim for ineffective assistance of counsel. Stone contends that his counsel was ineffective in two respects. The first of these is his counsel's failure to introduce evidence of Gardner's history of violence. This claim is procedurally defaulted because the state appellate court disposed of it on independent and adequate state law grounds. Specifically, the appellate court pointed out that Stone had failed to comply with a provision of Illinois law requiring that post-conviction petitions be supported by accompanying affidavits. *See* Ex. L at 7 (citing 725 ILCS 5/122-1(b), which provides that a post-conviction petition must be both verified by an affidavit, and 725 ILCS 5/122-2, which requires that post-conviction petitions be accompanied by affidavits, records, or other evidence supporting the allegations in the petition). The appellate court observed

-11-

that "[a]lthough codefendant Carter identified the source and character of the evidence, i.e., that he was personally aware of the victim's reputation for violence in the community, he did not attest that he would have testified to such evidence at defendant's trial." Ex. L at 9. "As a result, defendant failed, to provide the necessary 'affidavits, records, or other evidence' supporting his allegation that the victim was 'an ex-offender, known active gang member, known stick-up artist, and community bully.'" Ex. L at 9. Since this rationale represents an adequate, independent state ground, Stone's ineffective-assistance claim fails insofar as it rests on his attorney's failure to introduce evidence of Gardner's proclivity for violence.

The second basis for Stone's ineffective-assistance claim is his attorney's failure to call Jeremiah McReynolds ("McReynolds") as a witness. Stone cites an affidavit in which McReynolds avers that he saw Stone shoot Gardner, and that just prior to the shooting, he saw Gardner reach for an object from behind his back. In addition, Stone cites an affidavit from Carter stating that Carter had informed Stone's trial counsel about McReynolds and McReynolds's willingness to testify on Stone's behalf.

In order to prevail on an ineffective-assistance claim, Stone must show that trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced as a result. *See, e.g.*, *Smith v. Gaetz*, 565 F.3d 346, 352-53 (7th Cir. 2009).

With respect to the performance prong, "[t]he responsibility is on the petitioner to 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *George v. Smith*, 586 F.3d 479, 485 (7th Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)).

Here, Stone complains that there "was no record as to trial counsel's efforts and thinking as to such witness; what steps he may have taken to identify and speak with such witness, or his reasons (if any) for neither investigating nor presenting such witness." Pet. at 36. As a result, he claims that an evidentiary hearing is necessary to determine "whether counsel's failure to call the witness or bring up the background of the victim was a 'professionally reasonable tactical decision' or the result of incompetence." Reply at 24.

The record shows that Stone's counsel was aware of McReynolds, and indeed that at one point he was apparently intent on calling McReynolds as a witness. *See* Ex. Q at 182. During one pre-trial colloquy, for example, Stone's counsel informed the court that he planned to call McReynolds and noted that, since McReynolds was incarcerated at the time, arrangements would have to be made to enable him to attend the proceedings.[3]  *Id.*  It is clear,

---

[3] Stone has submitted a document indicating that McReynolds was paroled from the Illinois Department of Corrections on June 7, 2002, prior to the start of Stone's trial. *See* Reply Br. Ex. H. At the time of the colloquy, however, (May 10, 2002) McReynolds was still incarcerated. Ex. Q at 131.

-13-

therefore, that Stone's counsel did not call McReynolds as a result of an oversight.

It is true that the record does not disclose specifically why Stone's counsel ultimately decided against calling McReynolds; however, there are many plausible reasons: he might have been concerned that McReynolds's criminal history would undermine his credibility as a witness, for example, or he might have come to think that McReynolds's testimony would be duplicative of other witnesses' testimony. Stone must do more than merely point to a lack of evidence concerning his counsel's decision; he must come forward with affirmative evidence to rebut the presumption that his attorney's decision was rational and strategic. *See, e.g.*, *United States v. McCaig*, 946 F.2d 897 (7th Cir. 1991) (noting that there was no evidence in the record indicating a lack of pretrial investigation and that "a blank record cuts in favor of, not against, effective assistance"); *see also United States v. Weaver*, 882 F.2d 1128, 1139-40 (7th Cir. 1999) ("It would be a rare case where counsel's conscious decision not to call a witness would amount to constitutionally ineffective assistance.").

Nor, in any event, is Stone able to meet *Strickland*'s prejudice requirement. As the Seventh Circuit recently stated, "[t]he focus of the *Strickland* test for prejudice . . . is not simply whether the outcome would have been different; rather, counsel's shortcomings must render the proceeding fundamentally

unfair or unreliable." *Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010). Stone falls well short of this standard. At least three witnesses testified at trial that they actually saw Gardner pull a gun before Stone shot him. McReynolds's testimony that he merely saw Gardner reach for an unidentified object carries less force than the evidence actually presented. Stone claims that McReynolds's testimony would have carried more weight because, unlike those who testified to having seen Gardner with a gun, he and McReynolds were not blood relatives. I am not persuaded. There is no reason to think that the outcome of the trial would have been different if McReynolds had testified. The appellate court's rejection of Stone's ineffective-assistance claim was not unreasonable.

III.

Rule 11 of the Rules Governing § 2254 Cases requires a court to "issue or deny a certificate of appealability [COA] when it enters a final order adverse to the applicant." Where a habeas petition is denied solely on procedural grounds, as is the case with the bulk of Stone's claims here, "a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The

foregoing discussion makes clear that Stone has failed to make such a showing. To the extent that Stone's claims have been rejected on the merits, a certificate of appealability may issue only if he can "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Stone has failed to make this showing as well. Accordingly, I decline to issue Stone a certificate of appealability.

IV.

For the reasons discussed above, I deny Stone's petition for habeas corpus and I decline to issue a certificate of appealability.

ENTER ORDER:

_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 11, 2011